**Frank E. ENSMINGER, Respondent,**

v.

**James STOUT and W. T. Stout, Appellants.**

**No. 22372.**

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1956.

Vance Julian, Julian & Conrad, Clinton, for appellants.

Barkley M. Brock, Clinton, T. Bryant Johnson, Osceola, for respondent.

DEW, Presiding Judge.

Plaintiff's petition in this cause sought to recover damages alleged to have been incurred by the negligence of the defendants in causing the automobile owned by

defendant W. T. Stout and operated by his agent James Stout to collide with the plaintiff's truck parked on State Highway 52 in Henry County, Missouri and prayed judgment for damages to said truck in the sum of $700. Each defendant filed a counterclaim. A jury was waived by the parties, and the case was tried by the court. At the close of plaintiff's evidence the court sustained the motion of defendant W. T. Stout for a directed verdict and overruled a similar motion of the defendant James Stout. At the close of all the evidence the court found the issues in favor of the plaintiff on plaintiff's petition for $700, and in favor of the plaintiff and against both defendants on both counterclaims. After the judgment defendant James Stout moved to set aside the verdict and to enter judgment in his favor on the same ground set forth in his previous motions for a directed verdict and defendant W. T. Stout moved the court to set aside the judgment on his counterclaim and prayed that judgment be entered in his favor on the same for the same reasons set forth in his previous motions for a directed verdict. No ruling appears of record on the last two motions described, and defendants joined in a motion for a new trial, which was overruled. Thereupon, the defendants jointly appealed from the judgment entered on the day of the closing of the trial.

The petition alleged that on May 28, 1954, the plaintiff's 1949 half-ton pickup truck was parked on the side of the highway at a point on Missouri Highway 52 in Henry County near its intersection with Highway 13; that defendant James Stout was driving a 1950 Chevrolet automobile belonging to defendant W. T. Stout, and that defendant James Stout lost control of the Chevrolet and struck the plaintiff's 1949 Studebaker truck; that in particular, James Stout was negligent in failing to keep a proper lookout, driving at a reckless and unsafe speed under the circumstances, failing to exercise the highest degree of care to avoid hitting the truck, and failed to apply the brakes in proper time. It was further alleged that the defendant W. T. Stout was the owner of the Chevrolet, and that the defendant James Stout was operating it for and in his behalf. The petition concludes that as a direct and proximate cause of the above negligence of the defendants the plaintiff's truck was damaged in the sum of $700, for which plaintiff prays judgment.

In his answer the defendant W. T. Stout moved for dismissal of the plaintiff's petition for the reason that it fails to state facts sufficient to constitute a cause of action and, in the event such motion be not sustained, generally denied the plaintiff's allegations of negligence, admitted ownership of the Chevrolet sedan driven by his son defendant James Stout at the time in question, and denied that James Stout was at the time operating said vehicle for and in behalf of defendant W. T. Stout. The above separate answer further pleaded that the driver of the truck Paul Billings was agent and employee of the plaintiff and acting at the time within the scope of his employment; that said Billings parked the truck on Highway 52 carelessly and negligently in that he failed to exercise the highest degree of care and caution for the safety of plaintiff's property.

Defendant W. T. Stout also filed his counterclaim alleging, in substance, that the plaintiff's agent parked the plaintiff's truck with a portion thereof on Highway 52, and that the automobile of the defendant W. T. Stout was damaged in the sum of $850 when it collided with the rear of the plaintiff's truck; that Billings failed to keep his truck as far to the right side of the highway as practicable; failed to have proper taillights or warning lights on the rear of said truck, failed to keep a careful and vigilant lookout for other motor vehicles; failed to have on the parked truck a red light visible for a distance of 500 feet from the rear of the truck; failed to place warning light flares or signals to the rear of said truck, and that as a direct and proximate result of such carelessness and negligence, said defendant's automobile was damaged in the particulars therein specified, in the sum of $850.

The defendant James Stout, through his guardian ad litem W. T. Stout, separately moved to ·strike the plaintiff's petition for insufficiency, and denied the allegations of negligence in plaintiff's petition contained, but admitted that he was operating the Chevrolet· sedan at the time and place, belonging to defendant W. T. Stout. For further answer defendant James Stout pleaded contributory negligence on the part of the plaintiff in that Billings, the driver of the truck, had parked the plaintiff's truck on the highway and failed to exercise the highest degree of care and caution for the safety of plaintiff's property. Defendant James ·Stout also filed his separate counterclaim, setting forth substantially the grounds of negligence contained in the counterclaim of the defendant W. T. Stout, and claimed personal injuries by reason of the negligence of the plaintiff in the sum of $3,000.

Plaintiff's reply was in the nature of a general denial of the new matter pleaded in the answers and counterclaims and pleaded the contributory negligence of the defendant James Stout.

Attached to the motion for new trial were certain affidavits pertaining· to newly discovered evidence, mentioned in the motion for a new trial, which motion, as stated, was overruled.

Looking· to our own jurisdiction, which we are required to do whether or not suggested by the parties, we note the record pertaining to the form of the judgment in this case, as to which neither party has taken exceptions. As we have said, the court sustained, at the close of plaintiff's evidence, the motion of the defendant W. T. Stout, and overruled a similar motion of defendant James Stout, for a directed verdict. Although a jury had been waived in the case this action of the court had the effect of determining the status of the defendant W. T. Stout, and said defendant was entitled, at the close of the case, to a judgment in his favor on the plaintiff's petition. However, the judgment

of April 8, 1955, at the close of all the evidence was as follows:

"The Court: In this case the Court finds for the plaintiff and against the defendant James Stout for the sum of $700.00, and also finds for the plaintiff and against the defendants, both the defendants, on their counterclaims.

\* \* \* \* \* \*

'Judgment Entry

'Now on this 8th day of April 1955 comes the plaintiff in person and by his attorneys, T. Bryant Johnson and Barkley M. Brock, and the defendants appear in person and by attorneys, Vance Julian and Ted Conrad. Jury . is waived by the parties, the evidence heard, and the court hereby finds the issues in favor of the plaintiff on the plaintiff's petition and assesses the plaintiff's damage at Seven Hundred Dollars ($700.00). The court finds the issues in favor of the plaintiff and against both defendants on each of the defendant's counter-claims.' "

It· will be seen that the final judgment, on its face, does not recite that the court finds the issues in favor of the plaintiff on plaintiff's petition and against defendant James Stout only, nor that the assessment of damages of $700 is against defendant James Stout alone, but reads as if the finding and the assessment of damages were against both defendants on plaintiff's petition, leaving in the case and in the judgment and appeal the issue of the liability of defendant W. T. Stout· on the plaintiff's petition. It is the judgment in an action that "is the final determination of the right of the parties in the action". Section 511.020, RSMo 1949, V.A.M.S.

Furthermore, the defendants joined in a motion for a new trial, praying that the verdict be set aside and that a new trial be granted, or, in the alternative, to take additional testimony and direct the entry of a new judgment. Also, both defendants joined in the appeal and the appeal is expressly taken from the judgment "entered

in this action on the 8th day of April, 1955". That was the date of the judgment as entered at the close of all the evidence.

It is evident that this record presents an irreconcilable conflict which, if the judgment be considered strictly on its face, would create a doubt as to whether the issue of the liability of defendant W. T. Stout on plaintiff's petition is involved in this appeal.

However, considering the entire record, particularly those parts pertaining to the judgment, and giving to such record a broad and liberal construction, we assume that the trial judge, after sustaining, at the close of plaintiff's evidence, the motion of the defendant W. T. Stout for a directed verdict, intended, in the entry of judgment at the close of all the evidence, to find the issues on plaintiff's petition in plaintiff's favor as against defendant James Stout only, and in favor of the defendant W. T. Stout, in accordance with his previous ruling. This, we believe, would be the legal effect of the record as a whole. Section 511.270 RSMo 1949, V.A.M.S.

Extending to the defendants likewise a broad construction of their pleadings, we feel justified, under all of the record, to consider that the motion of the defendant W. T. Stout to set aside the verdict and to grant a new trial, was intended to challenge only the judgment of the court on his counterclaim.

Following this construction of the whole record we take it for granted that the joint appeal of the defendants from the judgment of April 8, 1955, was, as to the defendant W. T. Stout, an appeal from the judgment of the court in plaintiff's favor on said defendant's counterclaim, and that the appeal, on the part of the defendant James Stout, was from that part finding the issues against him on plaintiff's petition and assessing damages in the sum of $700, and finding the issues against him on his separate counterclaim.

The plaintiff testified that on May 28, he was the owner of the Studebaker truck in question; that on that date his son-in-law, Paul Billings, drove the truck to obtain some corn which both were buying for hog feed. Two of his daughters were with Billings in the truck, one of whom was Billings' wife. The next day after the collision he and Billings went to the place where it occurred, and when Billings showed him where he had parked the truck they placed the automobile in the same position and measured the distance between its wheel and the "actual roadway", which distance measured 19 inches. He said the highway was about 9 feet wide from the center strip to the edge of the main traveled portion; that he later measured the shoulder at the place of the accident and it measured 6 feet from the main driveway to the edge of the shoulder; that his truck was equipped with a taillight and a glass loom light on the rear. Plaintiff was not present in the truck at the time of the accident, but arrived there at 9:00 p. m. that evening. He said he knew it was not dark at 8:00 o'clock because he was then doing his chores at home.

In plaintiff's behalf Paul Billings testified that he drove the plaintiff's truck at the time of the accident and on the joint errand described by the plaintiff; that after he had loaded the corn and was returning home on Highway 52, he had a blowout of the right rear tire, about 7:00 p. m.; that he stopped the truck at a junction with a graveled side road, and then pulled the truck further east to a point about 20 feet down the highway to a place on the shoulder approximately a foot from the traveled portion of the highway, where he parked. The weather was clear and dry and it was "completely daylight". A passer-by, Mr. Prewitt, offered to take Billings, his wife and sister-in-law to the town of Deepwater, where Billings could buy a new tire and tube. After the purchase Mr. Prewitt returned the parties to the place where the truck was parked. They left Deepwater about 8:00 p. m. Prewitt turned on the lights of his car when he started. Other cars on the highway were then burning their lights. When the parties approached

the place where the truck was parked Billings saw the defendant's car approaching from the west at about 65 or 70 miles an hour, with its lights burning. It was being driven by defendant James Stout, who had a young man in the car with him. The two cars met opposite the parked truck, the rear right side of which was resting on a jack. As the Stout car went between the Prewitt car and the truck, the right front section of the Stout car struck the left rear section of the truck, knocking the truck some distance east of its position and into a ditch, and turning the Stout car around and to a place in the middle of the highway, facing south. Billings estimated the distance between the truck and the Prewitt car at the time of the accident to be between 12 and 13 feet. It was stipulated that the damage to the truck was $700, and the damage to defendant's car was the same amount.

Mrs. Billings also testified that the truck was parked about a foot off the main portion of the highway, and that the parties left the truck to go to Deepwater about 7:00 p. m., at which time it was "completely daylight".

Billings admitted that when he left the truck parked on the highway at 7:00 p. m. and went to Deepwater he left no lights burning on the truck, nor did he put out any flares. He said the other vehicles, including the Prewitt car in which he was riding at the time of the accident, had their lights burning because "it was getting dark".

The defendant James Stout testified that at about 8:00 p. m. on the date of the accident he was driving his father's car toward Clinton, Missouri with a young man friend, with whom he intended to attend a picture show; that while driving east on Highway 52 toward Deepwater he was traveling between 55 and 60 miles an hour and with the lights of his car burning. He said that although there was still some light in the west, it was impossible to see toward the east beyond the beam of his headlights because of the darkness. He testified that

he could not see over 100 feet to 150 feet ahead of his car, and that he saw the truck when he was within 150 feet of it. He stated that the truck was about a foot and a half on the blacktop without any lights, and that he could not avoid colliding with it because of oncoming cars and their blinding lights. He said he did not apply his brakes at any time after he saw the truck because—"there just wasn't enough time, that's all".

A highway patrolman testified in behalf of defendants that at the time of the accident it was dusk but not yet dark, although it was dark at 8:45, when he arrived there.

■ The first point made on this appeal is that the plaintiff was guilty of negligence per se in that his agent parked the truck on the highway at night without a red taillight on the rear thereof visible at a distance of 500 feet as required by statute, and was not parking as far to the right of the traveled portion of the highway as practicable, as also required by statute. Section 304.310 RSMo 1949, V.A.M.S. reads as follows: "No person shall drive, move, park or be in custody of any vehicle or combination of vehicles on any street or highway during the times when lighted lamps are required unless such vehicle or combination of vehicles displays lighted lamps and illuminating devices as this chapter required". Section 304.450 reads as follows: "Whenever a vehicle is parked or stopped upon a highway or shoulder adjacent thereto, whether attended or unattended during the times when lighted lamps are required, such vehicle shall be equipped with one or more lamps which shall exhibit a white light on the traffic side visible from a distance of five hundred feet to the front of such vehicle and a red light visible from a distance of five hundred feet to the rear; * * *". Section 304.020, now 304.015, Laws of Mo. 1953, p. 587, Sec. 1, reads in part as follows: "1. All vehicles not in motion shall be placed with their right side as near the right-hand side of the highway as practicable, except on streets of municipalities where ve-

hicles are obliged to move in one direction only or parking of motor vehicles is regulated by ordinance * * * ".

As we have seen from a review of the evidence, plaintiff's agent left the truck at 7:00 o'clock in the evening of May 28, parked on a state highway either wholly on the shoulder or partly on the traveled portion of the roadway and undertook to make a trip to Deepwater, Missouri, to purchase a tire and tube and to return to install them, and admittedly at no time during such period did plaintiff's agent have on the truck any lighted parking lamps as required by statute. There was evidence tending to show that it was necessary for other vehicles on the highway at the time to have their lights burning, and that the car in which the plaintiff's agent himself was returning to the truck had its headlights burning, as did also the defendant's car. There was evidence that if it was not completely dark at the time it was difficult to see the unlighted truck on the highway, with approaching headlights burning.

It was said in Taylor v. Silver King Oil & Gas Co., Mo.App., 203 S.W.2d 147, 154: "Under the statute, Sec. 8386, R.S.Mo. 1939, Mo.R.S.A. [Section 304.290 RSMo 1949, V.A.M.S.], and the adjudged cases on the subject, it was negligence per se for the defendant to stop its truck on the highway in the nighttime without the rear of the truck being illuminated by a red light as the statute directs". In the case of Roux v. Silver King Oil & Gas Co., Mo.App., 244 S.W.2d 411, 414, it was said: "The failure to park the truck as near the right-hand side of the highway as practicable and the failure to have a rear light or signal were clear violations of Secs. 304.020(1), * * R.S.1949, and was negligence per se".

■ In our opinion the evidence sufficiently established contributory negligence as a matter of law on the part of the plaintiff's agent, such as to bar the plaintiff's recovery under his petition.

■ The fact of the plaintiff's contributory negligence barring his recovery of damages under his petition does not, however, determine the right of the defendants to recover under their counterclaims, since other circumstances in evidence affect the issue of their own contributory negligence with which the plaintiff charges them, such as the failure of defendant James Stout to see or to be on the lookout to see the truck in time to avoid it, or to apply his brakes or to stop after he saw the truck and thereby avoid the collision, or traveling at a negligent rate of speed. The evidence as to all of these issues, however, raise disputed questions of fact, and in due regard to the opportunity of the trial court in this case to judge of the credibility of the witnesses, we defer to that court in its findings on the issues of fact involved in the counterclaims. Section 510.310 RSMo 1949, V.A.M.S.

■ Defendants' Point II is that defendant "James Stout was not guilty of any of the four counts of negligence alleged by the respondent in his petition". No specification of error is assigned explanatory of this point, it is a mere conclusion on the part of the defendants and presents nothing for our review under Point II. Ambrose v. M. F. A. Co-Operative Ass'n of St. Elizabeth, Mo.Sup., 266 S.W.2d 647.

■ Defendants' third point is that the court erred in refusing to admit in evidence the written report of the accident made by a highway patrolman. Considering this point only as it affects the judgment on the counterclaims, since we have already ruled that the plaintiff, as a matter of law, cannot recover under his petition, we note that the written report of the patrolman, who was a witness and used the report to refresh his recollection and testified fully on what he found at 8:45 a. m. when he arrived after the accident on the date and at the place of its occurrence, included his own sketch of the position of the cars before and after the impact, a notation of the distances the vehicles moved after the collision, a statement that the defendant James Stout's view was unobstructed, and his own "remarks" as follows: "Driver of #1 had a flat tire and apparently parked his

truck with one wheel on the blacktop so as to jack the wheel up to remove the tire. He had removed the tire and gone to a service station to get it repaired and was returning in a car driven by Charles Prewitt of Montrose, Mo., when the accident occurred. Driver of #2 met another car at the point where the truck was parked and was unable to see the truck through the lights of the oncoming car". The objection was that the written report was "incompetent, every part of it", which the court sustained.

The patrolman's written report was solely his own and was not a composite report made by several in the usual course of business. It was not required by any statute to be made or filed. It obviously contained conclusions of the patrolman, admittedly from sources other than his own knowledge as to material facts to be determined by the jury in the case. His recorded conclusions that the defendant James Stout's view at the time of the accident was "unobstructed", and that James Stout could not see the parked truck as he approached it because of the lights of an oncoming car were not the opinions of a person shown to be an expert in such subjects, nor that such subjects, under the evidence, were matters for expert opinion.

In Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 248, the statement of the police officer that judging from the location of the debris found by him after the accident, the point of impact was in the center thereof, was held not proper as expert testimony. The court defined expert testimony as follows: " 'Expert testimony is the opinion of a witness possessing peculiar knowledge, wisdom, skill, or information regarding a subject-matter under consideration, acquired by study, investigation, observation, practice, or experience, and not likely to be possessed by the ordinary laymen or an inexperienced person, and consequently who is incapable of understanding the subject under consideration, without aid of the opinion of some person who possesses such knowledge, wisdom, skill, practice, or experience; and a person who is competent to give expert testimony is denominated as "expert witness" ' ".

In Allen v. St. Louis Public Service Co., Mo.Sup., 285 S.W.2d 663, the court held that a written hospital report composed of entries by several doctors, nurses and attendants of a hospital, and which contained a statement that the patient was "malingering", but also contained a diagnosis and professional opinions from personal observation of the patient, was admissible. The theory of the ruling was that the report was a composite one combining the entries of several persons in attendance upon the person; that it was made in the regular course of the hospital's business; that such records are required to be kept by hospitals, Section 193.270 RSMo 1949, V.A.M.S.; that, furthermore, a hospital has been held to be a "business' as defined by Section 490.670 of the Uniform Business Records as Evidence Law Act, and as such would be admissible under Section 490.680 of that Act. The court further held that if any part of the report was admissible, it was all admissible, in the absence of specific objection to portions complained of. The court declined to consider independently the statement—"This patient is malingering".

In the Allen case, supra, the report was generally admissible, for the reasons stated by the court, subject to specific objection only. In the instant case, as shown, the patrolman's report contained none of the attributes of the hospital report in the Allen case. Offered as a whole it was incompetent and inadmissible as it contained hearsay evidence and conclusions. No effort was made to offer only the admissible portions. We believe the court was correct in refusing to admit the report in evidence.

Defendants' final point is that the court erred in not sustaining their motions for new trial upon the basis of new evidence discovered after the trial. As stated, defendants attached to their motions for new trial two affidavits, in each of which the affiants swore that they had passed the truck

shortly before the time of the accident; that it had no lights or reflectors attached and that they narrowly escaped collision with it. Applying the point to the judgment insofar as it applies to the counterclaims only, it would appear that the proposed evidence was merely cumulative and we do not deem it an error for the court, in its discretion, to have denied a retrial in order that such proposed newly discovered evidence might be made available.

We conclude that under all the evidence and the law, the judgment should have been in favor of both defendants on plaintiff's petition and that the part of the judgment finding the issues in favor of the plaintiff and against both defendants on both counterclaims should be affirmed. Accordingly, we reverse the judgment and remand the cause with instructions to the trial court to enter a judgment finding the issues on plaintiff's petition in favor of both defendants, and the issues in favor of the plaintiff and against both defendants on their respective counterclaims.

All concur.