**STATE of Missouri, Plaintiff-Respondent,**

v.

**Roosevelt JORDAN, Defendant-Appellant.**

No. 35655.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Nov. 25, 1975.

Motion for Rehearing or Transfer
Denied Jan. 23, 1976.

Application to Transfer Denied
March 8, 1976.

Charles D. Kitchin, Public Defender, James C. Jones, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Gary W. Brandt, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

This is an appeal by defendant-appellant, Roosevelt Jordan, from a judgment entered by the circuit court of the City of St. Louis on August 10, 1973, sentencing him to the department of corrections for a period of five years on each of two counts of robbery in the first degree, to run consecutively.

Appellant was charged by information with two counts of robbery in the first degree by means of a dangerous and deadly weapon. Count I charged a robbery of John Elrod, Jr. and count II charged that appellant robbed Keith Robert Love. The jury found the appellant guilty of both counts and assessed punishment at five years on each count. In accordance with the jury verdict, the defendant was, after overruling a motion for new trial and granting allocution, sentenced. For reasons hereinafter stated, we affirm.

Since the appellant does not question the sufficiency of the evidence to make a submissible case, only those facts necessary for the disposition of the points raised on appeal need be stated.

The jury could reasonably find the following. On January 30, 1973, between the hours of 8:00 and 9:00 p. m., two young men, John Elrod and Keith Love, were driving north on Sarah Street in the City of St. Louis, in John's automobile. John was driving. They were on their way to Keith's girlfriend's house.

While stopped for a stop sign at the intersection of North Sarah and Ashland, a group of young men, possibly five, surrounded the automobile, and "one of them tapped on the left window on my [Elrod's] side with a pistol and told me to raise—to open the door and let him in, and then another one jumped around on the other side of the car with a sawed-off shotgun, and another one had a pistol." Keith, who had been sitting in the front, passenger side, was forced into the back seat and sat between the intruders. The one with the shotgun, identified by both John and Keith as the defendant, was on the right side of Keith, and another man was on the left directly behind John. John Elrod continued to drive. A third man sat in the front seat next to Elrod. At trial, both John and Keith identified the defendant as the man who had the shotgun when he got into the back seat. Keith had gone to grade school with the defendant and knew him for a number of years. When the defendant got into the car he stated, "Man, you know how this is. This ain't nothing but a game." "You know how it is." He also gave the gun to the person in the front seat and that person held it to John. As stated, John was ordered to drive. Before traveling very far, he was ordered to pull over to the side and leave the car running but to turn the lights off and then get out. John and Keith were ordered out of the car. The man took a watch and some money from John and a suede jacket from Keith. Two of the men walked John and Keith to a nearby alley and told them to start "walking up the alley, and . . . not to turn around."

The two men then ran back to the car and the three then drove away in John Elrod's car.[1]

John and Keith ran to Keith's house and the police were called. Detectives William Monroe and Cairl [sic] Vaughn came to the Love house and picked up John and Keith and began to patrol the area. Meanwhile, Officers Chester Kell and his partner, Gerald McFadden, received a radio dispatch reporting the robbery at Sarah and Ashland. While proceeding to the scene, they observed an automobile on Clay Avenue which fit the description of the one taken from John Elrod. They advised the dispatcher, and waited for the detectives to bring John and Keith, the victims, to the scene. John stayed with Officers Kell and McFadden, and Keith drove around with Monroe and Vaughn to see if they could locate the men who took the car. The Evidence Technician Unit was called to check fingerprints on the automobile. After a few minutes of driving around, Keith "became very excited" because he "spotted" the defendant, Roosevelt Jordan. Keith knew him as "Buster." The officers arrested the defendant, advised him of his rights and brought him to the police station. At the station, after being again advised of his rights, he made a statement to the effect that he and others were "responsible" for the robbery of Mr. Elrod and Mr. Love.

After learning that Officers Monroe and Vaughn had one of the suspects in custody, Officers Kell and McFadden took John back to his car. They told him to drive it to the district station so that it could be processed. When John got into the car he noticed a pair of sunglasses on the floor on the passenger's side. When he arrived at the police station, he told the officers about the glasses and they were turned over to the police. The glasses were identified at trial by the victims as being similar to the ones that the defendant wore on the night of the robbery, and were introduced into evidence.

1. Elrod testified that he was the only one who could drive the car because the gears are backwards on it, "so they couldn't get the car any further than just around the block and then they left it there."

The defendant presented essentially an alibi defense. Testifying on his own behalf, he denied participating in any robbery and stated: (1) that he had been at home until about 8:50 on the night of the robbery, (2) that he walked to a Youth Center, a block from Ashland and Sarah, (3) that he only stayed a short while and from there he walked to his grandmother's house on North Sarah where his mother was, and (4) from his grandmother's house he started to walk to a confectionery and while on his way was arrested at Sarah and Labadie. Reverend Robert Rehbein, who works at the Youth Center, and defendant's mother substantially corroborated the defendant's testimony.

The trial of the cause began on June 18, 1973, in the circuit court of the City of St. Louis. The court conducted the principal aspects of the voir dire examination. All the members of the panel indicated that they would follow the court's instructions. Thereafter, counsel asked further questions. Defense counsel asked the veniremen if any of the members "would harbor any feeling one way or the other  .  .  .  if [defendant] would not take the stand." One of the veniremen, Mr. Richts, replied, "I think he should have something to say. I don't think he should sit back and say nothing.  .  . I think there would be some hanky-panky somewhere." At the close of the voir dire, defense counsel moved to strike this venireman for cause. The trial court denied the motion.

On the second day of trial, June 19, before the evidence was presented, the state endorsed Officer Dennis Steffen of the Evidence Technician Unit as a witness. Counsel objected to this endorsement, but the objection was overruled. Officer Steffen testified that he had lifted certain fingerprints from the window of the passenger side of John's automobile. These prints were later identified by Officer Edward Scholl of the Identification Division as being the print of the defendant, Jordan. No objection was made as to this witness.

After all the evidence was presented, the jury was instructed and they retired to deliberate. After almost two hours of deliberation, the jury sent a note requesting the exhibits to be sent to the jury room. The court forwarded certain photographs of John's automobile, but did not forward the glasses or the fingerprints. The trial court answered the jury's request and on the same note replied to the jury. Defense counsel objected to the reply, but was overruled.

The jury found the defendant guilty as charged on both counts. The trial court entered judgment in accordance with the verdict and ordered the sentences to run consecutively. Defendant duly appealed.

On this appeal, appellant raises three points. He contends: (1) that it was reversible error for the trial court to refuse "to dismiss a venireman for cause, upon defense counsel's motion, when the venireman said the defendant must talk (i. e., take the stand)," (2) that it was prejudicial error to allow Officer Steffen to be endorsed as a witness "on the day of the trial after the jury had been sworn," and (3) that it was error for the trial court to submit the "instruction" to the jury regarding the exhibits admitted into evidence because such was "an improper comment on the evidence and an erroneous statement of the law regarding the validity and effect of the expert testimony concerning fingerprints."

Appellant's first point is easily disposed of. Appellant contends that the trial court's refusal to dismiss a venireman who had indicated that he would draw an adverse inference from the defendant's failure to testify was reversible error. While the trial court initially denied defense counsel's motion to strike this venireman for cause, it appears from a supplemental transcript and a stipulation signed by counsel for both parties that the court subsequently reversed its ruling and struck this particular venireman from the jury panel. This event is not reflected in the original transcript, but the supplemental transcript, properly filed with this court after appellant's brief and thus a

part of the record on appeal, indicates that the court did reverse its ruling so that the challenged venireman was not among the "qualified panel . . . from which the jury was selected." Since the challenged venireman was not on the panel from which the jury was selected, the prejudice that defendant complains of in his brief is factually unfounded, and we need go no further than the fact of the record to dispose of this point. Although this point was briefed, the stipulation shows that it is no longer an issue.

The appellant's second point is that "[t]he trial court committed prejudicial error when it allowed witness Dennis Steffen of the Evidence Technical [sic] Unit to be endorsed as a witness on the day of the trial after the jury had been sworn." He argues that the witness was endorsed on the morning of the second day of the trial, and that his objection to the witness should have been sustained.

On the second day of trial, the state filed a memorandum endorsing Officer Dennis Steffen as a witness. Officer Steffen was a member of the Evidence Technician Unit and was to testify as to the lifting of fingerprints from the Elrod car. Appellant objected to the endorsement, claiming surprise, and the trial court overruled the objection. During trial, Officer Steffen was called to testify and counsel again objected. The trial court inquired as to the evidence appellant would offer had he known of the witness earlier. Counsel responded that he would inquire as to the circumstances surrounding the lifting of the prints and "would have an expert check them over with regard to what any fingerprints are." The prosecutor stated that appellant's counsel had previously been informed that this witness would be endorsed and had also been informed what his testimony would be. The court again overruled the objection.

Rule 24.17 provides that when an indictment or information is filed the names of all material witnesses for the prosecution shall be endorsed thereon. The names of other witnesses may be added at any time upon order of court and after notice to the defendant or his attorney. This principle is not applicable to a witness who appears at the trial for the production or identification of public records.

Our supreme court has discouraged delay in endorsing the names of additional witnesses, *State v. Cobb,* 444 S.W.2d 408, 415 (banc 1969), but "recognizes that late endorsements must sometimes be permitted if they can be made without prejudice to the defendant's rights." *State v. Cobb,* supra, 444 S.W.2d at 415. Rule 24.17 and the complementary statutes, §§ 545.070 and 545.240, RSMo, provide that witnesses may be subpoenaed and sworn by the state. Whether witnesses may be later endorsed is, in the final analysis, a matter of sound judicial discretion. There is no doubt that the trial court has a broad discretion in permitting the endorsement of the names of additional witnesses, *State v. Thost,* 328 S.W.2d 36, 38 (Mo.1959), "and a judgment of conviction will not be reversed because the name of a witness was endorsed on the information during trial unless it is shown that defendant was thereby prejudiced." *State v. Strawther,* 476 S.W.2d 576, 579 (Mo.1972); *State v. Cobb,* supra, 444 S.W.2d at 415. In the exercise of the court's discretion many factors may be taken into consideration. *State v. Strawther,* supra, 476 S.W.2d at 579.

We find no substantial prejudice or an abuse of discretion in permitting the name of Dennis Steffen to be endorsed as a witness on the second day of the trial. The defendant was positively identified by his grade school classmate, Keith Love, and was identified by John Elrod. The prosecutor informed defense counsel that he was going to endorse Steffen as a witness the day before trial began and what his testimony would be. In answer to a question by the trial court as to what evidence would be offered in opposition to the testimony of Steffen, counsel replied that he would have

had an expert check the fingerprints. Counsel cross-examined the witness. Under the circumstances, we find no abuse of discretion in permitting the endorsement of Officer Steffen.

Lastly, appellant contends that the trial court "committed error in presenting and submitting to the jury an 'additional instruction' regarding the exhibits admitted into evidence. The 'instruction' was an improper comment on the evidence and an erroneous statement of the law regarding the validity and effect of the expert testimony concerning fingerprints."

After the jury deliberated for an hour and fifty minutes, the jury requested "all material evidence presented in Court." After some colloquy between court and counsel, the court, on the same slip of paper on which the question was asked, stated:

> "Enclosed are photographs Exhibit 1 and 2 of the automobile that had been formally introduced into evidence. The eyeglasses marked as an exhibit were held up for your view. You have had the opportunity to see them. Fingerprint evidence such as the ink prints and the lifts are capable only of professional interpretation. You have heard the direct evidence of the interpretation and you have heard the cross-examination of the expert witness and you have heard the argument of counsel regarding fingerprints. Enclosed is the identification tag also offered in evidence."

Counsel for appellant objected to this phraseology because he contended "it infringes upon the jury's right as triers of fact to draw whatever inferences they can from the case . . . ."

The thrust of the appellant's contention on this point, as we understand it, is that that part of the note (appellant refers to this as an "additional instruction") which states ". . . Fingerprint evidence such

as the ink prints and the lifts are capable only of professional interpretation" (1) violates the principle that the testimony of experts is to be considered like any other testimony and is to receive as much weight as the jury may deem it entitled to when viewed in connection with all the other circumstances, and (2) is an improper comment on the evidence in violation of Rule 26.09 and § 546.380, RSMo 1969.[2]

Appellant relies on (1) *Scanlon v. Kansas City*, 325 Mo. 125, 28 S.W.2d 84 (banc 1930), and its progeny in support of his contention that the court singled out for comment the opinion testimony of the fingerprint expert, and (2) *State v. Martin*, 364 Mo. 258, 260 S.W.2d 536 (banc 1953), for authority that the court may not comment on the evidence.

In *Scanlon*, supra, the trial court, in a personal injury action, gave an "instruction" which included the statement, "It is your duty to weigh and consider such expert testimony [regarding the cause of paralysis]." 28 S.W.2d at 94.

The Supreme Court held this instruction erroneous because

> ". . . the testimony of experts is to be considered like any other testimony, is to be tried by the same tests, and receive just so much weight and credit as the jury may deem it entitled to when viewed in connection with all the circumstances . . . and the further corollary, an instruction of the court which disparages or singles out for comment the opinion testimony of expert witnesses is a plain usurpation of the functions of the jury: the jury are the sole and exclusive judges of the credit and weight to be given such testimony . . . ." *Scanlon v. Kansas City*, supra, 28 S.W.2d at 95.

See Annot., 86 A.L.R.2d 1038 (1962).

We do not believe that the answer of the trial court to the note sent by the

---

**2.** § 546.380: "The court shall not, on the trial of the issue in any criminal case, sum up or comment upon the evidence, or charge the jury as to matter of fact, unless requested to so do by the prosecuting attorney and the defendant or his counsel; but the court may instruct the jury in writing on any point of law arising in the cause."

jury violates this principle. The court did not single out for comment the opinion testimony of Officer Scholl and did not inform the jury that such testimony was to be given more weight than other witnesses. The note was merely a reply to the request of the jury. Permission to take exhibits into the jury room is a matter of justiciable discretion. *State v. Arrington,* 375 S.W.2d 186, 193 (Mo.1964); *State v. Smith,* 357 S.W.2d 120, 123 (Mo.1962). The trial court had the discretion to send the photographs, exhibits 1 and 2, and to withhold from the jury the sunglasses and ink prints.

We hold that the court in its reply to the request for exhibits did not violate the principle set forth in *Scanlon,* supra, and other authorities relied upon by the appellant. *State v. Quilling,* 363 Mo. 1016, 256 S.W.2d 751, 752 (banc 1953); *Listerman v. Day and Night Plumbing & Heating Serv.,* 384 S.W.2d 111, 121 (Mo.App.1964), and *Stahlheber v. American Cyanamid Company,* 451 S.W.2d 48, 56 (Mo.1970).

Neither do we believe that the reply to the jury's request was a comment on the evidence prohibited by § 546.380. The appellant relies on *State v. Martin,* supra. In *Martin,* the supreme court en banc dealt with an instruction which informed the jury that if a person ". . . 'uses upon another a deadly weapon at a vital part of the body, he is presumed to intend death or great bodily harm to the person against whom such weapon is used.'" 260 S.W.2d at 538. The court held that such an instruction where the facts are fully developed by eyewitnesses should not be given.

But the reply here was not a comment on the testimony nor a comment on the weight to be given to the testimony of the expert. The reply in effect merely informed the jury that it heard the testimony of the officer and that the "ink prints" themselves would serve no useful purpose. The expert's testimony is the evidence, not the prints, "for the prints [can] not be understood of themselves by the jury." 2 Wigmore, Evidence, § 414a(c), p. 393 (3rd Ed. 1940).

The reply to the jury's request was merely an explanation to the jury why the court had decided to withhold from their view the tangible ink prints which had been requested. The court, in this instance, did not usurp the function of the jury by commenting on the weight which should be given to the testimony, nor did it single out for comment the testimony so as to emphasize its importance in the minds of the jurors. Cf. *Scanlon v. Kansas City,* supra.

The statement "fingerprint evidence . . . are [sic] capable only of professional interpretation" was not a comment on the weight to be given the testimony, but merely an explanation of why the ink prints were withheld. The court did not, as in *Scanlon,* proceed further. The court did not express its opinion in such a manner so as to take away the judgment of the jury. See comments in 75 Am.Jur.2d, Trial, § 663 (1974). The court went on to explain to the jury that it had heard the direct evidence of the interpretation of the fingerprint evidence and the cross-examination of witness Scholl and the argument of counsel. This in effect informed the members of the jury that the weight was for them to determine and in our opinion did not constitute a comment on the testimony.

We have read the entire transcript, the briefs and authorities relied upon by the appellant and find no prejudicial error.

■ However, we take cognizance of the fact that this case was tried prior to *State v. Baker,* 524 S.W.2d 122 (Mo.Banc 1975). We cannot determine from the record whether the consecutive sentence was based upon the exercise of the court's discretion or whether it was imposed under the compulsion of § 546.480. We thus set aside the consecutive sentences and remand the cause for the sole purpose of resentencing within the court's discretion, in accordance with the guidelines of *State v. Baker,* supra. See also *State v. McCollum,* 527 S.W.2d 710 (Mo.App.1975). In all other respects, the judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.