STATE of Missouri, Respondent,

v.

Cedric BLUE, Appellant.

Cedric BLUE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 55728, 59280.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 11, 1991.

Jeannie Arterburn, Deborah B. Wafer, St. Louis, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his conviction by a jury of rape and sodomy of a ten-year-old girl (victim) and the denial of his post-conviction relief motion without an evidentiary hearing. We affirm the convictions and reverse and remand for an evidentiary hearing on the amended Rule 29.15 motion.

Viewed in a light most favorable to the verdict, the evidence reveals defendant started dating victim's mother (mother) sometime in 1983 when defendant was 15 and mother was 23. Two years later, in 1985, defendant moved in with mother and her two daughters at mother's residence.

On August 1, 1987, defendant was residing with mother and her two daughters. Victim was 10 at the time; victim's sister (sister) was 8. Mother had a job working at the St. Louis City Post Office. That day her shift was from 2:30 p.m. to 11:00 p.m. Defendant often cared for the mother's daughters while mother worked. Mother left for work about 1:00 p.m., leaving her two daughters in defendant's care.

Defendant fed the two girls dinner and after dinner they were allowed to play outside. Sometime after they came in from playing across the street, defendant told the girls to get ready for bed. After they changed into their nightgowns, the three, defendant and the two girls, laid down on a blanket in the living room to watch T.V. Eventually sister got up to go to the bathroom. When she came back she laid down on the couch. After a time, defendant touched sister's toes to see if she was awake. Sister pretended to be asleep and did not respond to defendant's touch. Thereafter, when defendant thought sister was asleep, defendant asked victim to "suck his dick." Victim refused. Defendant said he would "buy [victim] a gift" if she complied. Sister testified she saw victim get on top of defendant and saw that victim's nightgown was "pulled all the way down." After the incident defendant told victim not to tell anyone what had happened or he would "hurt her mother."

Mother returned home from work after midnight finding her two daughters and defendant still awake watching T.V. in the living room. They all went to sleep that night without incident but the next day

when mother and her two daughters were on the porch and defendant was in the bathroom, victim told her mother: "After [defendant] leaves, mamma, I got something to tell you and you won't want to see [defendant] again after I tell you this." However, victim refused to say anymore until after defendant left.

Later that day, mother and defendant had an argument. Defendant left to take the bus to his grandmother's house. Thereafter, victim and sister told mother that defendant had "done something bad" to victim. Sister told mother, "[victim] got touched in places that she should never be touched." Mother immediately ran across the street to use the neighbor's phone to call the police. When the police officer arrived, mother and police officer went to the bus stop to pick up defendant. Victim was also taken to St. Louis Children's Hospital. She was given a physical exam by Dr. George Tiller (doctor) and spoke with Karen McEwere (nurse), a nurse and a member of the Sexual Abuse Management Team. Victim also spoke with Police Detective Sheila Simmons–Kleinecke (detective).

At trial, victim, sister, mother, nurse, detective and doctor testified for the State. Defendant and a criminalist for the St. Louis Police Department testified for the defendant. Out-of-court statements made by victim to mother, nurse and detective that the victim was raped and sodomized by defendant were admitted into evidence pursuant to § 491.075, RSMo 1986. The medical testimony revealed evidence that the victim's injuries were consistent with those of a ten-year-old who had had sexual intercourse with an adult male.

Defendant was convicted by a jury of rape and sodomy and he appeals. Defendant's first three points allege the trial court erred in (1) admitting as substantive evidence out-of-court statements of victim that defendant had sexual intercourse with her because the admissions deprived him of a meaningful opportunity to confront the victim with regard to the rape and the statements did not provide sufficient indicia of reliability to allow their admission

under § 491.075; (2) permitting victim's out-of-court statement three different times from three different sources where § 491.075 does not authorize repetition and duplicative evidence; and (3) denying defendant's motion for judgment of acquittal because the evidence was insufficient to sustain a conviction of rape because the victim's testimony was inconsistent and contradictory and there was insufficient corroborating evidence. We will address defendant's first three points together.

■ There is no question but that the out-of-court statements were admissible. Section 491.075, RSMo 1986 provides in pertinent part:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568 ... not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings ... as substantive evidence ... if:

(1) the court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provides sufficient indicia of reliability; and

(2) the child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness....

Here, the victim was 10 years old at the time of the incident and 11 years old when she testified at trial. The trial court held a pre-trial hearing to determine the reliability of the out-of-court statements. At the hearing mother, nurse and detective testified to what the victim told them, when and under what circumstances. Mother testified as to how her two daughters initially approached her the morning after the incident and told her they needed to tell her something. Mother described victim as scared and crying when the two daughters approached her later to describe what happened the night before. The nurse testified she interviewed the victim at the hospital. The nurse was allowed to look at her records from her interview with the victim and recited quoted excerpts of the victim. Also, the police detective testified, relaying the circumstances under which the victim

told her what had occurred. All three witnesses were cross-examined.

■ The trial court has considerable discretion in determining the reliability and admissibility of a child victim's out-of-court statements. *State v. Potter*, 747 S.W.2d 300, 305 [12] (Mo.App.1987). In this case two of the three State's witnesses were from unrelated institutions—one a nurse from the hospital and the other a police detective. Both were professionals, trained in dealing specifically in child sexual abuse cases. All three had similar testimony of what victim said the events were that took place between victim and defendant on the evening of August 2, 1987. The trial court conducted a thorough hearing outside the hearing of the jury. It did not abuse its discretion in determining the out-of-court statements provided sufficient indicia of reliability so as to allow those witnesses to testify in front of a jury. *State v. Fraction*, 782 S.W.2d 764, 767[3] (Mo.App.1989). This point is denied.

■ Defendant further contends the admission of the out-of-court statements deprived him of a meaningful opportunity to confront the victim with regard to the rape. In *State v. Wright*, 751 S.W.2d 48, 53[7] (Mo.banc 1988), our supreme court determined that the statute does not prevent the introduction of evidence pertinent to the defense or deprive him of a meaningful opportunity to defend against the charges; rather, it merely allows the jury to consider certain relevant evidence offered by the State. *Id.* Here, the victim testified at trial and defendant had the opportunity to cross-examine her. Defendant had a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issues. *Id.* This point is denied.

■ Defendant also contends the trial court erroneously permitted the victim's out-of-court statement three different times from three different witnesses which produced repetitive and duplicative evidence. Mother's testimony described the circumstances which surrounded her two daughters telling her about the incident. The nurse and the detective testified to not only the victim's out-of-court statements to them at the hospital but the victim's attitude, reactions and emotions during her interview with them. Because each of the three witnesses described the circumstances giving rise to and surrounding the making of the out-of-court statements, their testimony also possessed probative value distinct from the victim's statement alone. *State v. Bereuter*, 755 S.W.2d 351, 352[1] (Mo.App.1988). This point is denied.

■ Defendant contends it was erroneous to deny his motion for judgment of acquittal because the evidence was insufficient to sustain a conviction of rape because the victim's testimony was inconsistent and contradictory and there was insufficient corroborating evidence.

Viewing the evidence most favorable to the State, there is little question but that defendant sodomized victim. Furthermore, there is little question but that the victim's out-of-court statement that she had been raped by defendant was admissible under § 491.075, RSMo 1986. We also have sufficient medical testimony which determines the victim's injuries were such as to be consistent with sexual intercourse in a girl her age.

However, we have a unique situation. Here, the victim at trial denied she was raped by defendant on the night in question. Her testimony in pertinent part is as follows:

> [Prosecutor] Q: Okay. The last time it happened, did [defendant] put his penis in your mouth and in your privacy? ...
> [Victim] A: Just in my mouth.
>
> \*　\*　\*　\*　\*　\*
>
> [Defense attorney] Q: Okay. After this happened with [defendant] did you put ... your panties back on?
> [Victim] A: They were never off.

Furthermore, sister testified in pertinent part:

> [Defense attorney] Q: Now when you saw your sister get on top of [defendant], did your sister have any clothes on?
> [Sister] A: She had on a gown.

Q: Okay. Was her gown pulled all the way down?

A: Yes.

\* \* \* \* \* \*

[Defense attorney] Q: Was she wearing her panties?

[Sister] A: Yes.

 A directed verdict of acquittal is authorized only where there is insufficient evidence to support a guilty verdict. The function of the court is limited to determining whether there was sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *State v. Bagley,* 771 S.W.2d 93, 95[1] (Mo. App.1989). In evaluating this issue the trial court and this court must view the evidence and all of its reasonable inferences in the light most favorable to the State, disregarding any evidence or inferences to the contrary. *Id.; see also State v. Harvey,* 641 S.W.2d 792, 799[4, 5, 6] (Mo.App. 1982).

This case is different from those cases which look for corroborating evidence to support a victim's testimony that she was raped where her testimony is inconsistent or contradictory. However, we look to that rule for help in this case. The rule of law which governs the credibility of an uncorroborated witness' testimony in a rape case is as follows: evidence by the victim which is inherently contradictory or such as to leave the court clouded with doubt must be corroborated or the conviction will not stand. *Harvey,* 641 S.W.2d at 800[10].

In this case defendant is challenging the credibility of the admissible out-of-court statement by victim that she was raped where she testified at trial that she was not raped. Because this is an unusual situation, we must scrutinize the record and review all the surrounding circumstances to determine whether there was substantial evidence to support the conviction of rape. We must consider whether the victim's out-of-court statement and all the evidence is so contradictory so as to leave us "clouded with doubt" or "extremely doubtful" that defendant raped victim. *Id.* at [11].

In the present case, the nurse and detective gave detailed explanations of the circumstances under which they interviewed victim. Each gave detailed accounts of victim's statements and emotional status. In fact, detective testified that victim was too upset to speak with the male detective who began the interview with her, so much so that she, a female detective, had to be called to do the investigation. As far as what victim's statements were as to what actually occurred between defendant and victim, both the nurse, mother and detective all testified that she said defendant raped and sodomized her.

The medical evidence also corroborated the charge of rape. The doctor who did the physical exam of victim at the hospital testified that victim was very apprehensive during the physical exam. His results showed a "marked degree of redness and swelling in the vagina area.... not the normal anatomy of a ten year old because of the degree of irritation that was present." Based on his experience, and the degree of redness and swelling, he determined the "victim's injuries were consistent with a ten year old girl having sexual intercourse with an adult male." He stated he felt "quite confident that her physical findings were not consistent with any type of trauma from play or accidents or self-manipulation, but rather were consistent with sexual abuse."

We have only found one case where the child victim denied any sexual impropriety by defendant at trial and yet defendant was found guilty. *Fraction,* 782 S.W.2d at 766. In *Fraction,* out-of-court statements that victims said they were sodomized were admissible under the province of § 491.075, RSMo 1986; and also our court determined that despite the victims' testimony at trial that defendant did not sodomize them, the out-of-court statements came in as prior inconsistent statements under § 491.074, RSMo 1986. *Id.* at 767[3, 4]. Dissimilar to our case however is that in *Fraction,* there was evidence the victims' mother told her children to lie at trial about the sodomy. *Id.* Furthermore the *Fraction* court did not address an issue of sufficiency of the evidence.

In our case there is evidence that victim was afraid of defendant; she saw him hit and argue with her mother on several occasions. Additionally, mother continued seeing defendant even after he had been arrested. In fact, in one incident sister testified her mother "hid" defendant in the basement of the mother's house when a police officer came to her home.

Also, in children of tender years it is not uncommon for them to testify to some contradictions or have memory lapses. *Harvey*, 641 S.W.2d at 800[11]. During her testimony, victim was questioned about many alleged instances of rape or sodomy by defendant. She contended at trial that defendant had raped or sodomized her on several other occasions for which defendant was not charged. Whatever victim's reasons for stating defendant did not rape her on the night in question, we note there was substantial evidence to support a conviction of rape. We must hold that it was within the jury's province, which had the benefit of viewing and actually hearing all the witnesses testify, to decide whether defendant was guilty of rape. *Harvey*, 641 S.W.2d at 799, 800[7–9]. We will not overturn the conviction of rape. This point is denied.

■ Defendant also contends that the trial court erred in giving MAI–CR3d 300.-02, 302.04 and 313.30 because such instructions improperly defined proof beyond a reasonable doubt. In *State v. Antwine*, 743 S.W.2d 51, 62–63[12] (Mo.banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), our supreme court stated that the "firmly convinced" language "is intended to assist lay jurors in their understanding of the legal phrase 'beyond a reasonable doubt' ... 'firmly convinced' is essentially synonymous with 'beyond a reasonable doubt.'" We are constrained to follow this precedent. Defendant's point is denied.

■ Defendant alleges the motion court erred in denying relief without an evidentiary hearing on his post-conviction motion. Defendant contends his trial counsel was ineffective for failing to call his grandmother to testify at trial that she received a phone call from victim's mother in which the victim's mother told grandmother she forced her daughter to fabricate the rape and sodomy.

The motion court, in its findings and conclusions, determined:

> [G]iven the close relationship between the movant and his grandmother ... the timing of the alleged call and the removal of the children from the mother's custody months prior to the trial, counsel for movant chose not to call her. It was a part of his trial strategy not to call [grandmother], and given the totality of the circumstances, it was a wise use of strategy. Trial strategy is not a basis for finding ineffective assistance of counsel.

In *State v. Talbert*, 800 S.W.2d 748, 749[4] (Mo.App.1990), our court determined that in absence of an evidentiary hearing, there is no basis for determining the trial counsel's reason for failure to call a witness. In *Talbert*, movant alleged what his witness would have testified and, if true, the testimony would have been important to the defense. *Id.*

Similarly, here if grandmother had testified that mother told victim to fabricate the rape, this testimony could have been important to the defense. This testimony would have corroborated victim's testimony that she was not raped. The medical testimony was not conclusive as to whether victim had sexual intercourse with an adult male. It would have corroborated defendant's testimony he neither raped nor sodomized victim. Grandmother's testimony, if true, has the potential of changing the outcome of trial.

We reverse and remand for an evidentiary hearing as to the amended Rule 29.15 motion.

Judgment of convictions affirmed.

GARY M. GAERTNER, P.J., and AHRENS, J., concur.