STATE of Missouri, Respondent,

v.

Arthur MERCHANT, Appellant.

No. 63787.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 22, 1994.

Susan K. Eckles, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals the sufficiency of the evidence to support his conviction for attempted stealing of property worth over $150 in violation of §§ 564.011.1 and 570.030, RSMo 1986. We affirm.

The evidence adduced at trial revealed the following: On the morning of December 24, 1991, Sam Greco looked out his office window and observed Defendant walking toward a horse trolley parked on the vacant lot across the street. Greco saw Defendant climb into the trolley. Greco then saw a large piece of brass piping being thrown off the trolley. When Greco saw Defendant get off the trolley and bend the brass piping into thirds, he called 911. Greco then saw Defendant re-enter the trolley and come back out with more brass pieces. Greco also saw Defendant put a couple of small brass pieces in his pocket.

Officer Pipes responded to the 911 call. When he arrived, Defendant was standing five or six feet from the trolley, holding a long piece of brass and bending it into thirds. Officer Pipes placed Defendant under arrest and searched him. The officer discovered two brass end caps in each of Defendant's coat pockets. Defendant also had a slotted screwdriver, a Phillips screwdriver, a wrench, and a magnet in his rear pants pocket. Officer Pipes testified magnets are used by people who collect scrap metal to determine if a metal is iron or steel because these metals are of no value as scrap.

Daniel Apted also testified at trial. He stated his company designed the trolley and he was in charge of its care. Apted stated the brass railings on the trolley were custommade and the raw materials for the brass railings and their brackets cost $500. Apted also testified he did not give the Defendant permission to remove the railings.

Defendant took the stand in his own behalf. He stated, on the morning of December 24, 1991, he was walking to the Salvation Army when he passed a vacant lot with a horse trolley parked on it. He looked inside the trolley and saw some wine bottles and some tools. He stepped inside the trolley, picked up the tools, and put them in his pocket. When he turned to exit the trolley, the railing shifted forward. He tried to grab it, but it was too heavy and fell to the ground, bending on impact. He then tried to pull the railing back onto the trolley, but it

got caught on the trolley's hitch and bent again.

Defendant also stated the brass caps found in his pocket fell off the railing when it hit the ground. Defendant said he picked them up and put them in his pocket, but he did not intend to steal them. Instead, he planned to try to find the owner of the trolley, but the police arrived before he was able to do so.

At trial, Defendant filed a motion for acquittal at the close of the State's evidence and the close of all evidence, arguing the State failed to present evidence sufficient to convict Defendant. The trial court overruled both motions and submitted the case to the jury. The jury found Defendant guilty of attempted stealing of property worth over $150. Defendant was sentenced as a prior offender to jail time already served.

Defendant now appeals alleging the trial court erred in denying his motions for acquittal and his motion for a new trial because the State failed to submit sufficient evidence to convince a reasonable trier of fact Defendant committed all the elements of attempted stealing.

■ In order for a defendant to be entitled to a directed verdict of acquittal, there must be insufficient evidence from which a reasonable person could have found the defendant guilty as charged. *State v. Blue*, 811 S.W.2d 405, 409[6] (Mo.App.1991). In reviewing the sufficiency of the evidence, we view the evidence and all of its reasonable inferences in the light most favorable to the State, disregarding any evidence or inferences to the contrary. *Id.* at 409[8].

■ Section 564.011.1, RSMo 1986, provides:

A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense.

Further, § 570.030.1 states:

A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion.

If the value of the property or services appropriated is over $150, the stealing becomes a Class C felony. § 570.030.3(1). Therefore, attempted felony stealing may be accomplished by a purpose to steal property over $150, accompanied by an act which is a substantial step toward the commission of that crime. *State v. Mullins*, 637 S.W.2d 435, 437[2] (Mo.App.1982).

■ First, Defendant alleges the State failed to present evidence he took a substantial step toward depriving another of property worth over $150. A review of the evidence shows this argument is without merit. In order to constitute a "substantial step," an action must be strongly corroborative of the actor's intent to commit the underlying offense. *State v. Molasky*, 765 S.W.2d 597, 601[2] (Mo. banc 1989). Here, Greco observed Defendant climb onto the trolley, knock a portion of the brass railing off, and then start bending it into thirds. Defendant was still right next to the trolley when apprehended by police. Officer Pipes testified Defendant had brass end caps in his coat pockets and tools and a magnet in his pants pocket. Further, there was evidence magnets are used by scrap metal collectors to determine if a metal is iron or steel, and thus of no value as scrap. This evidence supports a finding Defendant took a "substantial step" towards stealing the brass railings.

■ Second, Defendant alleges the State failed to present evidence sufficient to prove the items Defendant attempted to steal were worth over $150. We disagree. Apted owns the company who designed and built the trolley. He testified the raw materials for the brass rails and their brackets cost $500 when the trolley was built in 1987. He stated this price did not include any of the additional cost for customizing the brass rails to fit the trolley. In Missouri, the purchase price and the age of an item are sufficient to establish its value under § 570.020. *State v. Holmes*, 830 S.W.2d 460, 462[2] (Mo.App. 1992).

■ Finally, Defendant alleges the State did not set forth with sufficient specificity the items Defendant was accused of stealing. As the Defendant points out, the

information charges Defendant with stealing *brass railings and brass caps* of a value of at least $150, while the instruction says the jury must find the Defendant moved *brass rails* and bent them for carrying. A variance between the information and the instruction is only fatal if the instruction submits a new and distinct offense. *State v. Brotherton*, 797 S.W.2d 813, 817[6] (Mo.App.1990). This is not the case here. Although the instruction does not require the jury to find the Defendant attempted to steal brass end caps as well as brass railings, it does not submit a new and distinct offense to the jury. Both the information and the instruction refer to the same offense, attempted stealing of brass materials worth over $150.

Further, there was sufficient evidence to support a finding the brass railings alone were worth in excess of $150. Apted testified raw materials used to make the railings, end caps and brackets cost over $500. Also, the photographs taken at the scene and Defendant's testimony about the weight of the railings showed the railings contained much more brass material than the brackets and end caps. This evidence is sufficient to establish the brass railings alone were worth over $500. Point denied.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.